IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRANDON R. SMITH,

     Plaintiff,

v.                                                    CASE NO. 1:20-cv-168-AW-GRJ

CAMPUS LODGE GAINESVILLE,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Second Motion for Summary Judgment, ECF No. 19, to which Plaintiff has responded. ECF No. 25.  Also before the Court is Plaintiff's Motion for Partial Summary Judgment, ECF No. 21, and the Defendant's response. ECF No. 24.  No replies were filed. The motions are, therefore, ripe for consideration.

For the reasons discussed below Defendant's Second Motion for Summary Judgment is due to be granted and Plaintiff's Motion for Partial Summary Judgment is due to be denied.

## I.  BACKGROUND

This is a housing discrimination and retaliation case brought under the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. §§ 3601, *et seq*., as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§

3601-19.  Plaintiff, proceeding *pro se*, is part of the class of persons

protected from discrimination under the FHA.  Defendant owns a student

housing apartment complex located at 2800 SW Williston Road,

Gainesville, Florida.  In the First Amended Complaint,[1] Plaintiff alleges that

Defendant charged him a higher rent because he is African American, ECF

No. 16 at 10, and that Defendant retaliated against him after he filed this

lawsuit.[2] *Id*. at 11-12.  For relief, Plaintiff seeks compensatory damages

and punitive damages.  *Id.* at 13. *See* 42 U.S.C. § 3613(c)(1).

## II.  LEGAL STANDARD

### A.    Summary Judgment Standard

A reviewing court "shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party

moving for summary judgment "bears the initial burden to show the district

court, by reference to materials on file, that there are no genuine issues of

---

[1] Plaintiff did not sign his First Amended Complaint under penalty of perjury, nor did he submit any affidavit attesting to his allegations. *See* ECF No. 16.  He did, however, certify under Fed. R. Civ. P. 11 that his legal claims had merit and his factual contentions had evidentiary support.  *Id*. at 7.

[2] Plaintiff also filed a fair housing claim with the U.S. Department of Housing and Urban Development ("HUD").  HUD referred Plaintiff's claim to the State of Florida's Commission on Human Relations, which determined that reasonable cause did not exist to believe that a discriminatory housing practice had occurred.  ECF No. 19-1 at 19-27.

material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

In the Eleventh Circuit, "[e]ven after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.* "Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *United States v. Four Parcels of Real Property in Green and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991). The reason underlying this requirement is simple:

> [A] movant generally does not satisfy its initial burden simply by pointing out to the court that the materials produced in formal discovery or the materials in the court file, as they might be constituted following the filing of the defendant's motion, *do not include* evidence of every essential element of a plaintiff's claim. While a plaintiff has the burden to prove its claim *at trial,* Rule 56 does not imply that a plaintiff has a freestanding obligation to reduce to a tangible form and disclose evidence relative to every

element of its case *prior* to trial, to "prove its case in discovery," so to speak.

*Am. Hospice, Inc. v. Sebelius*, No. 1:08-cv-1879-JEO, 2010 WL 9013005, at *10 (N.D. Ala. Jan. 27, 2010) (emphasis in original).

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

"In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at

840 (*citing Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Finally, while *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show leniency to *pro se* litigants, [they] will not serve as de facto counsel, or rewrite an otherwise deficient pleading in order to sustain an action." *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (citation and internal marks omitted).

## III.  RELEVANT FACTS

### A.  Plaintiff's Unsworn Allegations

Plaintiff alleges that Defendant charged him a higher rent because he is African American.  ECF No. 16 at 10. To support this allegation, Plaintiff says that "a few other tenants of different races" told him they were paying "$30-$40" less in rent.  *Id*. Plaintiff further alleges that Defendant retaliated against him after he filed this lawsuit in three ways: (1) Defendant

5

employees entered Plaintiff's apartment without his knowledge; (2) Defendant employees locked the door to the second bedroom in his unit ("Bedroom B"), depriving him of access to his belongings stored there; and (3) Defendant threatened to file a civil eviction lawsuit against him if he proceeded with his federal actions.  ECF No. 16 at 11-12.

In support of his allegations, Plaintiff filed copies of several unauthenticated electronic mail ("e-mail") communications that Plaintiff represents were exchanged between him and Defendant employees. ECF No. 25 at 21-35 and ECF No.21-1 at 14-33.  Even if the Court were to consider these communications at the summary judgment stage, these emails do not support Plaintiff's claims in this case.[3]

"The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citing cases from Six Circuits)). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial

---

[3] The only "evidence" put forward by Plaintiff in this case are: (1) the unsworn allegations of his complaint, (2) unauthenticated e-mails (none of which support his allegations) filed in support of his response and his motion (ECF No. 21 at 14-32; and ECF No. 25 at 21-34); and (3) a printout of the Merriam-Webster dictionary definition of the term "nigger."  ECF No. 21-1 at 9.

or reduced to admissible form." *Id.* (citations and internal quotation marks

omitted).  Similarly, a court may consider unauthenticated evidence on a

motion for summary judgment if the evidence is unchallenged. *Mims v. Old*

*Line Life Ins. Co. of America*, 46 F. Supp. 2d 1251, 1260 (M.D. Fla.

1999); *see also Holmes v. City of Atlanta*, No. 1:08-cv-3560-JOF-CCH,

2010 WL 1328713, at *1-2 (N.D. Ga. Jan. 27, 2010) ("[I]n order for

a *document* to be considered on a motion for summary judgment, it must

be authenticated by an affidavit that meets the requirements of Rule 56(e)

of the Federal Rules of Civil Procedure, or otherwise authenticated

pursuant to the Federal Rules of Evidence."). "The burden is on the

proponent to show that the material is admissible as presented or to

explain the admissible form that is anticipated." *Riley v. Univ. of Ala. Health*

*Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1186 (N.D. Ala. 2014) (quoting

Fed. R. Civ. P. 56 advisory committee note to the 2010 amendments).

Hearsay "is a statement the declarant does not make while testifying

at the current trial or hearing; and a party offers in evidence to prove the

truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

"Hearsay is inadmissible unless the statement is not hearsay as provided

by Rule 801(d), or falls into one of the hearsay exceptions enumerated in

Rules 803, 804, and 807." *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005).

In this case, Plaintiff's unsworn allegations and unauthenticated e-mail communications are hearsay—they are being used by Plaintiff to establish the truth of the matter asserted, namely that Plaintiff was discriminated and retaliated against by Defendant. *See* Fed. R. Evid. 801(c). Consequently, the emails cannot be considered. Plaintiff chose not to depose a corporate representative of the Defendant or submit his own affidavit or declaration authenticating the e-mails. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir, 2012). Therefore, the Court cannot consider the e-mails in ruling on the motion for summary judgment. *Martin v. Allied Interstate*, LLC, 192 F. Supp. 3d 1296, 1302-03 (S.D. Fla. 2016) (refusing to consider unauthenticated documents on motion for summary judgment); *see also Holmes*, No. 1:08-cv-3560-JOF-CCH, 2010 WL 1328713 at *2 (N.D. Ga. Jan. 27, 2010).

There is a more fundamental problem with the unauthenticated emails Plaintiff has filed than simply their hearsay nature. One of the emails Plaintiff filed has been fabricated. The e-mail purports to have been sent to Plaintiff by Defendant's property manager, Dominic Morales, from his "dmorales@campuslodgegainesville.com" e-mail account. ECF No. 25 at

22. The e-mail dated September 11 (no year) at 10:02 a.m. is titled "IDIOT" and simply says "Nigger boy!"  *Id*.  Plaintiff points to this email as evidence of racial discrimination.

The summary judgment evidence before the Court demonstrates that this email is fabricated. Defendant's General Counsel and Information Technology ("IT") Director have submitted sworn declarations attesting that they investigated the e-mail and determined it to be a sham.  ECF No. 19-1 (Affidavit of Ryan Dolan, General Counsel for Coastal Ridge, LLC) ("Dolan Aff.") ¶13c; ECF No. 19-7 (Affidavit of Kevin Schmehl, Coastal Ridge Management, LLC's IT Director) ("Schmehl Aff.") ¶4.

As evidence that the email is fabricated Defendant points to the declaration of Keven Schmehl, the IT Director. Mr. Schmehl avers that Defendant places a block on an employee's work e-mail account when the employee resigns his position. ECF No. 19-7 (Schmehl Aff.) ¶7.   So, when Defendant's Property Manager Dominic Morales left the company on August 21, 2020, his work e-mail account was blocked that day at 5:00 p.m. *Id*. ¶7.  Therefore, because Mr. Morales had left the company twenty-one days before the email purportedly was sent, and his account was blocked on the day he left employment, it is not possible for Plaintiff to have

9

received an e-mail from Morales' work e-mail account on September 11th.[4]

Plaintiff offered no evidence refuting that Morales no longer worked for the

company when the email purportedly was sent nor did Plaintiff respond in

any way to Defendant's sworn evidence demonstrating that the email could

not have been sent from Mr. Morales' work email account on September

11th

### B. Defendant's Evidence

#### 1. Defendant's Process for Setting Rental Rates

Defendant's student housing lease agreements are 12-month

agreements executed on a "per-bed" basis.  ECF No. 19-2 ¶6 (Affidavit of

Joe McDiffitt, Director of Property Management for Coastal Ridge, LLC)

("McDiffitt Aff.").[5]  An apartment unit with two bedrooms is leased to two

different residents under two different lease agreements, and the two

residents share common areas (*e.g.*, kitchen, living room).  *Id.*

---

[4] Filing false documents with the Court is sanctionable conduct under Federal Rule of Civil Procedure 11.  *See* Fed. R. Civ. P. 11(b), (c)(1); *see also Attwood v. Singletary*, 105 F.3d 610, 612 (11th Cir. 1997) ("Rule 11 requires [a *pro se* plaintiff] to make reasonable inquiries into the veracity of the information filed before the court[.]") (quotation omitted). This is not the first time Plaintiff has been untruthful to this Court. This Court previously found that Plaintiff had "lied under oath" during a hearing in another case to "scuttle the settlement" to which he and the Defendant had agreed. *Brandon Ricardo Smith v. Bi-Lo Holdings LLC*, No. 1:16-cv-2-MW/GRJ (N.D. Fla.) (Order granting motion to enforce settlement dated Jan. 12, 2018) ECF No. 86 at 2.

[5] Coastal Ridge, LLC is the property management company that manages Defendant student housing apartment complex. ECF No. 19-2 (McDiffitt Aff.) ¶2.

Defendant's Director of Property Management, and others, meet once each year to establish initial rental rates for the "prelease cycle." *Id*. A "prelease cycle" is the period of time during which Defendant prepares to market and sell leases to prospective residents for the upcoming school year.  ECF No. 19-2 (McDiffitt Aff.) ¶6.  Initial rates are set for each floorplan, and management evaluates the rates on a weekly basis thereafter.  *Id*.

Rental rates are established using a tiered rate system.  *Id*. ¶7. Under the tiered rate system, different floor plans are priced according to their tier, and the lowest rates are available for the first leases signed.  *Id*. Rental rates for a particular floorplan can increase, or decrease, based on the number of leases signed for that floorplan. *Id*.  Throughout the prelease cycle, the initially approved tiered rental rate plan may, on occasion, change.  *Id*. ¶8.  This is done by adjusting the tiers or assigning a new rate or rent concession for all leases for a given floorplan.  *Id*.  Rate adjustments are based on several factors, such as year-over-year preleasing percentage (*i.e*., whether a specific floorplan is leasing better or worse compared to the prior year's prelease period). *Id*. ¶8a. Other factors include basic supply and demand, market conditions and competitor performance.

11

*Id*. ¶8a-b. Property-level employees do not adjust rental rates; rather, that directive comes from Defendant's corporate staff.  *Id.*  ¶¶5-6.

### 2.  Plaintiff's Leases at Defendant Apartment Complex

Plaintiff executed three (3) separate one-year student housing lease contracts for a single bedroom at Defendant's apartment complex. ECF No. 19-2 (McDiffitt Aff.) ¶¶12-14. The first lease, dated July 16, 2019, was for one bedroom of a two-bedroom apartment.  ECF No. 19-3 (Lease Agreement) at 1-40. Under that lease, Plaintiff was assigned room #08-0816A ("Bedroom A"), and his first month's rent installment was $611.00. *Id*. at 48.  Plaintiff's roommate was assigned room #08-0816B ("Bedroom B").  *Id.*

The following year, Plaintiff renewed his lease for Bedroom A, and the occupant of Bedroom B moved out.  ECF No. 19-3 (Lease Agreement) at 51-92; ECF No. 19-2 (McDiffitt Aff.) ¶14.  Because Plaintiff did not want a new roommate, he also executed a lease for Bedroom B.  ECF No. 19-3 (Lease Agreement) at 93-102; ECF No. 19-2 (McDiffitt Aff.) ¶14.  The rental rate for each bedroom was the same $615 per month ($1,230 total).  *See* ECF No. 19-3 (Lease Agreements) at 52, 95.  The lease periods varied, however.  The lease term for Bedroom A ran from August 1, 2020 through July 31, 2021. *Id*. at 52.  The lease term for Bedroom B ran from August 17,

12

2020 through July 31, 2021, as Defendant needed time to "turn" that now-vacant room. *Id*. at 95; ECF No. 19-2 (McDiffitt Aff.) ¶14.

To "turn" a room means to clean, paint, repair and ready it for a new tenant. ECF No. 19-2 (McDiffitt Aff.) ¶9.[6]  In July and August of 2020, the Defendant was required to turn Bedroom B for the upcoming lease term. *Id*. ¶11.  On July 30 and August 3, 2020, Defendant advised Plaintiff that its vendors needed to enter his unit to clean and paint it. ECF No. 19-5 (Affidavit of Kelvin Hendrix, Roving Property Manager for Coastal Ridge Management, LLC) ("Hendrix Aff.") ¶11d.  Although Defendant had an obligation to inspect, clean and prepare Bedroom B, Plaintiff refused to permit Defendant's staff entry into the apartment, despite being provided notices of needed access for necessary maintenance.  ECF No. 19-1 (Dolan Aff.) ¶12.  Additionally, at that time, Defendant informed Plaintiff that his renewal lease for Bedroom A did not cover Bedroom B, and that he would not gain possession of Bedroom B until he paid the associated rent. ECF No. 19-5 (Hendrix Aff.) ¶11d. Yet, Plaintiff never paid the first installment.  ECF No. 19-2 ¶15 (McDiffitt Aff.); *see also* ECF No. 19-1

---

[6] Defendant's student housing apartments go through a "turnover" process each Summer within a very short time frame.  ECF No. 19-2 (McDiffit Aff.) ¶9.  During turnover, property staff move out hundreds of outgoing residents and turn hundreds of vacated units and bedrooms.  *Id*.

(Dolan Aff.) ¶12 (Plaintiff has not paid "one cent" of rent for Bedroom B to date).

Importantly, Plaintiff's rental rate for Bedroom A and B ($615 per month) was the exact same rate charged similarly situated residents who are not African American.  ECF No. 19-2 (McDiffitt Aff.) ¶16.  During the same lease term, the rental rate for one bedroom of a two-bedroom apartment leased to three Caucasians and one Asian resident was $615 per month.  *Id*.[7]

Because Plaintiff never paid the first installment of rent for Bedroom B, he was considered a "no show" under Defendant's policy.  ECF No. 19-4 (Affidavit of Ashley Rankin, Property Manager for Campus Lodge, Gainesville) ("Rankin Aff.") ¶5. Under the No-Show policy, *id*. at 37-41, the outstanding account balance of a tenant who fails to pay rent (subject to mitigation) is sent to collections or to an attorney to obtain judgment for breach of contract. *See id*.  Notice of Defendant's No-Show policy is set forth in Plaintiff's lease agreement for Bedroom B as follows: "If you do not pay the first month's rent when or before the Lease Contract begins, or any other rent due under this lease we may end your right of occupancy and

---

[7] *See* leases signed by Audun Cowart, ECF No. 19-3 at 110-118 (Lease Agreement), Hailey Woodbury, *id*. at 119-28 (Lease Agreement), Junyi Wang, *id*. at 129-138 (Lease Agreement); and Spencer Durbin, *id*. at 139-148 (Lease Agreement).

recover damages, attorney's fees, court costs, and other lawful charges."
ECF No. 19-3 (Lease Agreement) at 96. On or around September 14,
2020, Defendant's property manager posted a three-day Notice to Vacate
for Bedroom B for Plaintiff's failure to pay rent.  ECF No. 19-4 (Rankin Aff.)
¶5.[8]

## IV.  DISCUSSION

The thrust of Defendant's motion for summary judgment is that
Defendant did not discriminate or retaliate against Plaintiff and that Plaintiff
has failed to present any evidence that it did.  The Court agrees.

### A.    FHA Discrimination Claim

The FHA makes it unlawful "to refuse to sell or rent after the making
of a *bona fide* offer, or to refuse to negotiate for the sale or rental of, or
otherwise make unavailable or deny, a dwelling to any person because of
race[.]" 42 U.S.C. § 3604(a).  As the Eleventh Circuit has held, "to prevail
on a claim under the FHA, a plaintiff must demonstrate 'unequal treatment
on the basis of race that affects the availability of housing.'" *Hallmark*
*Developers, Inc. v. Fulton Cty., Ga.,* 466 F.3d 1276, 1283 (11th Cir. 2006)
(quoting *Jackson v. Okaloosa Cty., Fla.,* 21 F.3d 1531, 1542 (11th Cir.

---

[8] As of October 2, 2020, Plaintiff's outstanding balance for unpaid rent was $1,987.00.
ECF No. 19-4 (Hendrix Aff.) at 36.

1994)).  The FHA prohibits not only direct discrimination but practices with racially discouraging effects. *Evans v. Tubbe,* 657 F.2d 661, 663 n.3 (5th Cir. 1981) (internal quotations omitted).  Regulations interpreting the FHA provide that charging a higher rent based on race is a prohibited action under § 3604(a)(3). The regulation provides in relevant part:

> Imposing different sales prices or rental charges for the sale or rental of a dwelling upon any person because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. § 100.60(b).

To state a claim for discrimination, plaintiff must make a *prima facie* case under the three-part burden of proof test developed in *McDonnell Douglas*.[9]  *Sec'y of HUD v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990). First, the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

---

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Here, Plaintiff has come forward with no competent summary judgment evidence that establishes a *prima facie* case of discrimination. Plaintiff's unsworn allegations and e-mail communications do not create a genuine dispute of fact concerning whether Defendant charged him a higher rental rate because he is African American. Plaintiff's bare allegations (without any supporting evidence) that "a few other tenants of different races" told him that they were paying "$30-$40" less in rent are not sufficient to survive a motion for summary judgment. Notably, even the fake "racist" e-mail makes no reference about rent.

Plaintiff is required to go beyond the pleadings and present *competent evidence* showing that there is a genuine issue for trial. Plaintiff has not met his burden. Defendant is entitled to summary judgment on this basis alone under the *McDonnell* framework. But, in addition to showing that Plaintiff has failed to come forward with any evidence supporting his claim, Defendant has demonstrated with uncontroverted evidence that Plaintiff was charged the exact same rent for the exact same accommodations during the exact same lease term as residents who are not African American. Plaintiff has made no showing that any of Defendant's actions amounted to a pretext for racial discrimination.

Accordingly, the undersigned concludes that Defendant is entitled to

summary judgment on Plaintiff's FHA discrimination claim.

### B.   FHA Retaliation Claim

Plaintiff's claim for retaliation also has no basis in law or fact. The

FHA's antiretaliation provision, 42 U.S.C. § 3617, makes it illegal "to

coerce, intimidate, threaten, or interfere with any person" who has

exercised their rights under 42 U.S.C. § 3603 through 42 U.S.C. § 3606.  In

the Eleventh Circuit, "to state a claim for retaliatory housing discrimination,

a plaintiff must assert that a defendant coerced, intimidated, threatened, or

interfered with his exercise of rights granted under the FHA[.]" *Phillipeaux*

*v. Apartment Inv. & Mgmt. Co*., 598 F. App'x 640 (11th Cir. 2015) (citations

omitted).

To establish a *prima facie* case of retaliation, a plaintiff must show

that: (1) he engaged in a protected activity, (2) the defendant subjected him

to an adverse action, and (3) a causal link exists between the protected

activity and the adverse action. *Id.* at 644; *Fisher v. SP One, Ltd.*, 559 F.

App'x 873, 878 (11th Cir. 2014).  The plaintiff must allege conduct that rises

to the level of coercion and intimidation.  *Wood v. Briarwinds Condo. Ass'n*

*Bd. of Directors*, 369 F. App'x 1 (11th Cir. 2010) (*per curiam*) (concluding

that plaintiff's allegations did not rise to the level of coercion and

intimidation required under the FHA).  Furthermore, eviction is not

retaliatory where the record establishes that the plaintiff failed to pay rent.
*See Phillipeaux*, 598 F. App'x at 645.

In this case, Plaintiff complains of the following conduct: (1)
Defendant employees entered Plaintiff's apartment without his knowledge;
(2) Defendant employees locked the door to Bedroom B, depriving him of
access to his belongings stored there; and (3) Defendant threatened to file
a civil eviction lawsuit against him if he proceeded with his federal actions.
ECF No. 16 at 11-12.

None of these actions is "adverse" nor do they rise to the level of
coercion or intimidation required by the FHA. *See, e.g., Sofarelli v. Pinellas
Cty.*, 931 F.2d 718, 722 (11th Cir. 1991) (allegations regarding notes
threatening to break plaintiff "in half" if he did not leave the neighborhood,
hitting plaintiff's truck, and spitting at him while shouting obscenities clearly
constituted coercion and intimidation); *Sheets v. Villas*, Case No. 8:15-cv-
1674-T-30JSS, 2016 WL 6093224, *4 (M.D. Fla. Oct. 19, 2016) (allegations
that plaintiff was retaliated against when (1) his van, which was leaking oil,
was towed; (2) he was assessed a fine for the oil leak; (3) a board member
complained that plaintiff violated pool rules by wearing a mask and snorkel;
and (4) the same board member took plaintiff's photograph, did not rise to

the level of intimidation and threats, nor did plaintiff demonstrate any nexus

between the complained of conduct and his FHA protected activity).

Conspicuously absent from the record is any evidence that the

complained of conduct here had anything to do with Plaintiff's filing suit.

Defendants had a duty and a right under the lease agreement to access

Plaintiff's apartment, and the record (including Plaintiff's deficient e-mails)

shows that Plaintiff was given ample notice of the Defendant's need for

entry and that he refused to allow access. ECF No. 19-1(Dolan Aff.) ¶¶12-

13; ECF No. 19-5 (Hendrix Aff.) ¶¶11-12; *see also* ECF No. 19-5 (Hendrix

Aff.) at 7-8, 61.

Defendant's uncontroverted evidence demonstrates that Plaintiff

never paid rent for Bedroom B (nor does Plaintiff allege that he did). The

Defendant had every right under the lease to lock the door, and Plaintiff

had no right to store any belongings there. Moreover, there is no evidence

whatsoever in the record (including within Plaintiff's unauthenticated e-

mails) that the Defendant threatened eviction in retaliation for Plaintiff filing

housing discrimination complaints. But, even if Defendant had successfully

evicted Plaintiff, eviction is not retaliatory where the record shows (as it

does in this case) that the plaintiff failed to pay rent. *See Phillipeaux*, 598 F.

App'x at 645.

In sum, Defendant has met its burden of showing that there is no genuine dispute of a material fact regarding Plaintiff's FHA retaliation claim. Plaintiff has failed to go beyond the pleadings and present competent evidence showing that there is a genuine issue for trial here. Plaintiff's unsworn allegations are not sufficient to avert summary judgment, especially where Plaintiff's own documents support Defendant's position that its enforcement of its rights under the lease was lawful under the lease and reasonable.

## IV.  CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on all claims. It is, therefore, respectfully **RECOMMENDED**:

1.  Defendant's Second Motion for Summary Judgment, ECF No. 19, should be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment, ECF No. 21, should be **DENIED**.

2.  In view of the evidence in the record that Plaintiff presented fabricated evidence, Defendant should be afforded an opportunity to request sanctions against Plaintiff prior to entry of judgment.

**IN CHAMBERS** this 23rd day of September 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.